UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MARCELLA LONG, | CASE NO. 1:18-CV-2344 |
| Plaintiff, | |
| v. | MAGISTRATE JUDGE GEORGE J. LIMBERT |
| ANDREW M. SAUL[1], COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

Plaintiff Marcella Long ("Plaintiff") requests judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). ECF Dkt. #1. In her brief on the merits, filed on February 11, 2019, Plaintiff asserts that the administrative law judge ("ALJ") committed two errors warranting a reversal and/or remand of her case. ECF Dkt. #14. On April 26, 2019, Defendant filed a brief on the merits. ECF Dkt. #17. For the following reasons, the Court AFFIRMS the ALJ's decision and DISMISSES Plaintiff's case in its entirety WITH PREJUDICE.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB and SSI in November 2015, alleging disability beginning November 13, 2014 due to spinal synopsis/back problems, troubles standing, troubles walking, leg problems, and diabetes. ECF Dkt. #10 ("Tr.")[2] at 67, 75, 83-84, 172, 176. Plaintiff's applications were denied initially and upon reconsideration. *Id.* at 74, 82, 95, 106. On June 17, 2016, Plaintiff requested an administrative hearing. *Id.* at 131.

---

[1] On June 17, 2019, Andrew M. Saul became the Commissioner of Social Security, replacing acting Commissioner Nancy A. Berryhill.

[2] All citations to the transcript refer to the page numbers assigned when the transcript was filed in the CM/ECF system rather than the page numbers assigned when the transcript was compiled. This allows the Court and the parties to easily reference the transcript as the page numbers of the .PDF file containing the transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECF system.

On October 13, 2017, a hearing was held before an ALJ in which Plaintiff, with counsel present, and a vocational expert ("VE") testified. Tr. at 27. The ALJ issued his decision on February 15, 2018, finding Plaintiff not disabled and denying her applications for DIB and SSI. *Id.* at 9-21. Plaintiff requested a review of the hearing decision, and on August 13, 2018, the Appeals Council denied review. *Id.* at 1-4. On October 9, 2018, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1. On December 17, 2018, the parties consented to the authority of a Magistrate Judge. ECF Dkt. #11; #12. Plaintiff filed a merits brief on February 11, 2019 and Defendant filed a merits brief on April 26, 2019. ECF Dkt. #14; #17.

## II.     RELEVANT PORTIONS OF THE ALJ'S DECISION

On February 15, 2018, the ALJ issued a decision finding that Plaintiff was not disabled. Tr. at 9-21. The ALJ stated that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. *Id.* at 14. He further found that despite having worked after the alleged disability onset date, Plaintiff had not engaged in substantial gainful activity since November 13, 2014, the alleged onset date. *Id.* Continuing, the ALJ determined that Plaintiff had the following severe impairments: diabetes; hypothyroidism; essential hypertension; Grade 1 anterior spondylolisthesis and disc space narrowing at L4-5 with evidence of instability on the flexion and extension views; straightening of the cervical lordotic curve with decrease and slight osteophyte formation at C5-6; and obesity. *Id.* at 15. The ALJ then indicated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After consideration of the record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b)[3] with the following restrictions: can occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds; is able to stand and walk 4 hours of an 8-hour workday; can never climb ladders, ropes or scaffolds, but can occasionally climb ramps or stairs; can

---

[3] 20 C.F.R. § 416.901 *et seq.* governs SSI determinations, while 20 C.F.R. § 404.1501 *et seq.* governs DIB determinations. These regulations are virtually identical.

2

occasionally balance, stoop, kneel, crouch or crawl; and can never be exposed to unprotected heights, moving mechanical parts and never operate a motor vehicle. Tr. at 15-16. The ALJ then stated that Plaintiff was capable of performing past relevant work as a dispatcher and cashier and that this work does not require the performance of work-related activities precluded by the Plaintiff's RFC. *Id.* at 19. Ultimately, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 13, 2014 through the date of his decision. *Id.* at 21.

## III. STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to Social Security benefits. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The plaintiff has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in

3

scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation omitted)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6thCir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole*, 661 F.3d at 937 (citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009)) (internal citations omitted). Therefore, even if an ALJ's decision is supported by substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a plaintiff on the merits or deprives the plaintiff of a substantial right." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### V. LAW AND ANALYSIS

#### A. Treating Physician Rule

Plaintiff first asserts that the ALJ failed to adhere to the treating physician rule by giving little weight to the opinion of Dr. Delorise Brown, M.D. ECF Dkt. #14 at 13-18. For the following reasons, the Court finds that the ALJ did not violate the treating physician rule.

4

An ALJ must give controlling weight to the opinion of a treating source[4] if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and is not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2)[5]; *Price v. Comm'r Soc. Sec. Admin.*, 342 Fed.Appx. 172, 175-76 (6th Cir. 2009); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

If an ALJ declines to give controlling weight to the opinion of a treating source, he must determine the weight to give that opinion based upon a number of regulatory factors. 20 C.F.R. § 404.1527(c)(2). Such factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544 (citing 20 C.F.R. § 404.1527(c)). Although an ALJ must "consider" all of the factors in 20 C.F.R. § 404.1527(c) and must "apply" the factors listed in 20 C.F.R. § 404.1527(c)(2), including its subsections, through (c)(6) to determine the weight to give that opinion, he is not required to discuss every factor in his decision as long as he provides "good reasons." *See* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p, 1996 WL 374188, at *5 (1996)[6]; 20 C.F.R. § 404.1545(a)(2); *Thacker v. Comm'r of Soc. Sec.*, 99 Fed.Appx. 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."); *Francis v. Comm'r Soc. Sec. Admin.*, 414 Fed.Appx. 802, 804 (6th Cir. 2011) ("Although the

---

[4] The undersigned notes that the Social Security Administration has changed the treating physician rule for claims filed on or after March 27, 2017. *See* "Revisions to Rules Regarding the Evaluation of Medical Evidence," available at https://www.ssa.gov. The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions. Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules and will consider the supportability and consistency factors as the most important factors.

[5] Because the sections for DIB and SSI are virtually identical and for convenience, the undersigned will only cite to 20 C.F.R. § 404.1527, even though 20 C.F.R. § 416.927 also applies.

[6] Effective March 27, 2017, SSR 06-03p, 96-2p, and 96-5p have been rescinded by Fed. Reg. Notice Vol. 82, No. 57, page 15263. These regulations are still effective for claims filed before March 27, 2017.

5

regulations instruct an ALJ to consider these factors, they expressly require only that the ALJ's decision include 'good reasons ... for the weight ... give[n] [to the] treating source's opinion'—not an exhaustive factor-by-factor analysis.") (internal citation omitted). Even a one sentence explanation for discounting a treating physician's opinion can suffice under the good reasons requirement. *See Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009) (ALJ's one-sentence justification for discounting treating physician's opinion "reach[ed] several of the factors that an ALJ must consider," and satisfied good reasons requirement.) (internal citations omitted).

Under the "good reasons" rule, the ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, at *5. This allows a plaintiff to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore "be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied." *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, 375 Fed.Appx. 543, 551 (6th Cir. 2010). If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers,* 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544); *Parks v. Social Sec. Admin.*, 413 Fed.Appx. 856, 864 (6th Cir. 2011).

Dr. Brown completed a medical source statement on August 30, 2016, noting the following impairments: lifting and carrying limited to 5 pounds occasionally and frequently; standing and walking limited to 10 to 15 minutes total in an 8-hour workday or 10 minutes

6

without interruption; sitting is limited to 10 minutes total and without interruption; can rarely climb, balance, stoop, crouch, kneel, crawl, reach, and push/pull; can occasionally perform fine manipulation; environmental restrictions include heights, moving machinery, temperature extremes, but not pulmonary irritants or noise; a cane and brace were prescribed, but not a walker; Plaintiff needs to be able to alternate positions between sitting, standing, and walking at will; Plaintiff experiences "severe" pain that interferes with concentration, takes her off task, and causes absenteeism; Plaintiff needs to be able to elevate legs at will to 90 degrees; Plaintiff requires 6 additional unscheduled rest periods during an 8-hour workday outside of a standard 30 minute lunch and two 15 minute breaks. Tr. at 1333-34. Dr. Brown also handwrote additional comments to support her assessments, mostly noting her relevant diagnoses. *Id.* She also made a final handwritten comment at the end, stating that Plaintiff is unable to walk, stand, or sit for prolonged periods and that she has diabetic neuropathy. *Id.* at 1334.

On August 23, 2017, Dr. Brown completed a second medical source statement, noting the following impairments: lifting and carrying limited to 5 pounds occasionally and frequently; standing, walking, and sitting were limited to a total of 1 hour in an 8-hour workday and 30 minutes without interruption; can rarely climb, balance, stoop, crouch, kneel, crawl, and push/pull; can occasionally reach and perform fine and gross manipulation; environmental restrictions include heights, moving machinery, temperature extremes, and pulmonary irritants, but not noise; a walker and brace were prescribed, but not a cane; Plaintiff needs to be able to alternate positions between sitting, standing, and walking at will; Plaintiff experiences "severe" pain that interferes with concentration, takes her off task, and causes absenteeism; Plaintiff needs to be able to elevate legs at will to 45 degrees; Plaintiff requires 6 additional unscheduled rest periods during an 8-hour workday outside of a standard 30 minute lunch and two 15 minute breaks. Tr. at 1541-42. Dr. Brown once again handwrote additional notes to explain and support her assessments. *Id.* To note, both of the medical source statements are standard forms requiring the physician to fill it in with check marks and a written explanation. *See id.* at 1333-34, 1541-42.

The Court finds that the ALJ's reasons for affording less than controlling weight and only little weight to Dr. Brown's opinions constitute good reasons under the treating physician rule.

7

A treating source's medical opinion is entitled to controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record" 20 C.F.R. § 404.1527(c)(2). In his decision, the ALJ discussed both of Dr. Brown's medical source statements. Tr. at 18-19. He then afforded Dr. Brown's opinions "little weight and not controlling weight," reasoning that her "extreme limitations are not supported by conservative treatment and progress notes." *Id.* at 19. In addition, the ALJ found that Dr. Brown's two statements were inconsistent, specifying that one indicated that Plaintiff was prescribed a walker (but not a cane) and the other reported that Plaintiff was prescribed a cane (but not a walker). *Id.* (citing Tr. at 1334, 1542). Thus, the ALJ explicitly attacked both the supportability and consistency factors.

An ALJ must make determinations based upon the record as a whole. *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 249 (6th Cir. 2007). So, too, must this Court upon judicial review. *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989) ("It is well established that judicial review of the Secretary's findings must be based upon the record taken as a whole."). The Sixth Circuit has also endorsed supporting a conclusion in a particular step of the ALJ's decision by looking to factual findings elsewhere in that decision. *See generally Forrest v. Comm'r of Soc. Sec.*, 591 Fed.Appx. 359, 365-66 (6th Cir. 2014) (finding that the ALJ made sufficient factual findings elsewhere in his decision to support his conclusion at step three); *Bledsoe v. Barnhart*, 165 Fed.Appx. 408, 411 (6th Cir. 2006) (looking to findings elsewhere in the ALJ's decision to affirm a step three medical equivalency determination).

The ALJ first attacked the supportability aspect of Dr. Brown's opinion. Specifically, the ALJ discussed Plaintiff's progress notes, for instance, noting the following: in 2015, Plaintiff's neurological exam was grossly intact without any major motor or sensory deficit and straight leg raising was negative bilaterally; in 2016, she showed a good range of motion in the neck and back, straight leg raising was negative bilaterally, extremities were normal, motor strength and tone were 5/5, and gait was normal. *See* tr. at 17 (citing tr. at 1306-07, 1316-17); *see also* tr. at 1338, 1370, 1386, 1498, 1513, 1526 (showing that Plaintiff exhibited a normal gait or range of motion throughout her treatment notes). The ALJ also provided examples of her conservative

8

treatment: in 2015 Dr. Laham recommended steroid injections and continuation of physical therapy; in May 2016, Plaintiff was started on Cymbalta and was to continue Baclofen, and, in June 2016, she received a lumbar epidural steroid injection; and participated in physical therapy in July 2017 through August 2017. *Id.* at 17-18 (citing tr. at 1306-07, 1316-17, 1335-39, 1346, 1439, 1543-1610). In addition, the ALJ noted that Dr. Kim allowed Plaintiff to go back to work on full-time duty by February 17, 2015 and that Plaintiff actually worked during part of the time she alleged disability (2015). Tr. at 17-18 (citing 1274); *see also* tr. at 36-37 (Plaintiff testified she last worked around October 25, 2015 at Ohio Living Communities); *see generally* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.").

Next, the ALJ attacked the consistency of Dr. Brown's opinions, specifically pointing out an internal inconsistency between her two opinions due to the fact that one opinion stated that Plaintiff was prescribed a walker (but not a cane) while the other stated that she was prescribed a cane (but not a walker). Tr. at 19 (citing tr. at 1334, 1542). Earlier in his decision, the ALJ found that the record did not show that Plaintiff even needed a cane because she consistently demonstrated a normal gait in 2016 and 2017. Tr. at 18 (citing tr. at 1338 (normal gait), 1369-70 (normal range of motion, no tenderness), 1385-86 (negative for gait problem), 1393-94 (normal neurological), 1402 (lumbar strain), 1409 (unremarkable exam), 1426 (decreased range of motion, tenderness, and pain), 1428 (positive for myalgias, back pain and joint pain), 1431 (decreased range of motion, tenderness, and pain), 1433 (positive for back, joint, and neck pain following motor vehicle accident), 1436 (decreased range of motion, tenderness, and pain), 1496-99 (normal gait), 1509 (normal gait), 1511-14 (normal gait), 1517-1521 (normal gait), 1526 (normal gait but positive for back pain), 1540 (tenderness in cervical back)). The ALJ also acknowledged Plaintiff's hearing testimony in which she stated that Dr. Brown prescribed her a cane after Plaintiff complained about being "off balance." Tr. at 16 (citing tr. at 46, 50-51); *see also* tr. at 33 (noting Plaintiff arrived at the ALJ hearing with a cane but the cane prescription was not in the file).

9

The Court finds that the ALJ's reasons attacking the supportability of Dr. Brown's reasons are supported by good reasons but that the ALJ's attack on internal inconsistency was not supported by good reasons. The ALJ's opinion, as a whole, demonstrates that Dr. Brown's extreme limitations were not supported due to conservative treatment and progress notes. However, both of Dr. Brown's opinions noted that Plaintiff was prescribed an ambulation device. Whether the device was a cane, a walker, or both is immaterial and does not prove that Dr. Brown's opinions, taken as a whole, were sufficiently internally inconsistent to constitute a good reason under the treating physician rule. Ultimately, given that the ALJ did provide at least one good reason, the Court finds that the ALJ did not violate the treating physician rule and substantial evidence supports his treatment of Dr. Brown's opinions.

### B. Pain Analysis

Next, Plaintiff argues that the ALJ failed to perform a proper pain analysis as he failed to take into consideration all of the factors that he was required to consider when assessing a person's pain. ECF Dkt. #14 at 18-20. For the following reasons, the Court finds that the ALJ adequately considered Plaintiff's subjective pain symptoms and substantial evidence supports his decision to discount her symptoms and to support his RFC determination.

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529[7], SSR 16-3p[8]. In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.*; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the

---

[7] 20 C.F.R. § 416.929 is the virtually identical SSI counterpart to 20 C.F.R. § 404.1529, governing DIB. For convenience, the undersigned will only refer to the SSI section. The relevant version of these sections is for the effective date between June 13, 2011 to March 26, 2017 because the instant disability applications were filed in November 2015.

[8] SSR 16-3p superseded SSR 96-7p effective March 28, 2016.

ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See* 20 C.F.R. § 404.1529; SSR 16-3p. Secondly, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the plaintiff's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the such symptoms to determine the extent to which the symptoms limit the plaintiff's ability to do basic work activities. *See* 20 C.F.R. § 404.1529; SSR 16-3p. In his decision, the ALJ recited the aforementioned relevant standard. *See* tr. at 16.

The ALJ must first consider objective medical evidence to assist in evaluating a plaintiff's symptoms. 20 C.F.R. § 404.1529(c)(1)-(2). When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the symptoms of the plaintiff by considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in 20 C.F.R. § 404.1529(c)(3). These factors include: the plaintiff's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any pain medication; any treatment, other than medication, that the plaintiff receives or has received to relieve the pain; and other factors concerning the plaintiff's functional limitations and restrictions due to pain. 20 C.F.R. § 404.1529(c)(3); *Felisky v. Bowen*, 35 F.3d 1027, 1039-40 (6th Cir.1994) (In addition to these factors, the Social Security Administration also reviews the opinions and statements of the plaintiff's doctors.).

Plaintiff asserts that the ALJ failed to consider Plaintiff's statements of the intensity, persistence, and limiting effects of her symptoms, Dr. Brown's opinions, and Plaintiffs attempt at taking numerous medications for her pain. ECF Dkt. #14 at 19-20. As previously discussed, the ALJ discussed Dr. Brown's opinion and provided good reasons for affording little weight to her opinions. Furthermore, the ALJ extensively discussed Plaintiff's specific statements regarding the intensity, persistence, and limiting effects of her symptoms. *See* tr. at 16-17. In reviewing Plaintiff's testimony, the ALJ noted the following: Plaintiff testified that she is unable to work

11

because of exertional limitations and drowsiness related to her medication. Tr. at 16. She also reported that her entire back (extending to her tailbone) is in constant pain throughout the day and described it as a 5 on the pain scale with medication (without medication, she is an 8 on the scale). *Id.* Since the alleged onset date, Plaintiff advised that her impairments have worsened, citing to decreased abilities. *Id.* In terms of physical abilities, Plaintiff testified that she is able to sit 15-30 minutes, stand 5 minutes (10 minutes with a cane), walk 10 minutes (15 minutes with a cane), and lift 5 pounds. *Id.* She also reported difficulty reaching overhead, but no difficulty reaching in all other directions, and she stated that she has tingling in her arms, which causes her to shake her arms. *Id.* Plaintiff testified that she fell three times the week before the hearing and used to fall twice a month on average. *Id.* After having told her doctor she was "off balance," she was prescribed a cane. *Id.* Plaintiff said she cannot do her past sit down job because she would not be able to look at the computer screen or type on the keyboard. *Id.* She also needs to eat and take medication at certain times because she is diabetic. *Id.*

The ALJ also accounted for Plaintiff's testimony regarding her daily living activities. Plaintiff testified that she lives with her 15-year-old daughter and performs 10% of the household chores (such as cooking, washing the dishes, dusting, laundry). Tr. at 16. Her daughter does the balance (cooking, washing the dishes, laundry, dusting, vacuuming, sweeping, mopping). *Id.* Plaintiff does not do home repairs, gardening, or yardwork (mow grass, shovel snow). *Id.* Plaintiff testified that she cares for her nieces every other weekend. *Id.* She also drives her daughter to school, but Plaintiff's mother picks up the daughter because Plaintiff is usually at a doctor's appointment. *Id.* at 16-17.

Contrary to Plaintiff's other assertion, the ALJ considered Plaintiff's attempt at trying numerous medications for her pain. The ALJ noted that Plaintiff treats with medication and that some negative side effects include drowsiness. Tr. at 17. However, later in his decision, the ALJ stated that the record lacks complaints to treating physicians that medications cause excessive drowsiness. Id. at 18. Further, Plaintiff said her pain is an 8 on a 1-10 scale without medication and a 5 with medication. *Id.* at 17. She also said that she takes naps every day or every other day for about 30 to 60 minutes. *Id.* Elsewhere in his decision, the ALJ took note of some medications

12

Plaintiff had taken. For example, in December 2015, Plaintiff was on Tramadol and gabapentin 900 mg daily. *Id.* He again noted that she was prescribed Neurontin in 2015. *Id.* (citing tr. at 1251-98); *see, e.g.*, tr. at 1264 (prescribing "gabapentin (NEURONTIN) 100 mg capsule" in November 2015) (gabapentin is a generic name for Neurontin). In May 2016, Plaintiff reported that her medications were ineffective at controlling pain and that she was subsequently instructed to take Cymbalta and was to continue taking Baclofen. *Id.* (citing tr. at 1335-39).

After careful consideration of the evidence, the ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. Tr. at 17. However, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.*

For the above reasons, the Court finds that the ALJ applied the proper legal standards in evaluating Plaintiff's symptoms and resulting limitations, and in doing so, properly considered her subjective complaints of pain. The Court further finds that the ALJ set forth sufficient reasons for the determinations that he made and substantial evidence supports those determinations. Contrary to Plaintiff's specific challenges, the ALJ did, in fact, consider Plaintiff's subjective statements of the intensity, persistence, and limiting effects of her symptoms, Dr. Brown's opinions, and Plaintiff's attempt at taking numerous medications for her pain. ECF Dkt. #14 at 19-20.

## **VI.** **CONCLUSION**

For the foregoing reasons, the Court AFFIRMS the decision of the ALJ and DISMISSES Plaintiff's complaint in its entirety WITH PREJUDICE.

Date: December 18, 2019  */s/George J. Limbert*
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE